# Exhibit A



**U.S. Department of Justice**

Criminal Division

---

*Fraud Section*                                          *Washington, D.C. 20530*

April 22, 2020

Greg D. Andres, Esq.
Neil H. MacBride, Esq.
Davis Polk & Wardwell LLP
901 15th Street NW
Washington, DC 20005

Kenneth M. Mogill, Esq
Mogill, Posner & Cohen
27 E. Flint Street, 2nd Floor
Lake Orion, MI 48362

Re:     *United States v. Emanuele Palma*, Case No. 2:19-cr-20626-NGE-DRG

Dear Messrs. Andres, MacBride and Mogill:

Enclosed please find additional discovery materials that the government is producing to
you pursuant to Federal Rule of Criminal Procedure 16 and the Protective Order in the above-
captioned case.  The enclosed flash drive labeled as "U.S. v. Emanuele Palma, Production 2" and
the disc labeled as "U.S. v. Emanuele Palma, Production 2a" contain discovery materials from
the government's Relativity electronic document database in load-ready format and constitute
25,714 documents.  An index to the contents of the flash drive and disc is attached to this letter.

We will circulate the password for the flash drive via email. If you experience any
difficulty in loading the Relativity database on your system or in locating materials within this
production that you are interested in reviewing, please do not hesitate to contact us.

We also write in response to your discovery letters dated October 22, 2019, December 19,
2019, and your recent letter dated April 20, 2020.  In these letters, you request materials pursuant
to *Brady/Giglio* and Federal Rules of Criminal Procedure 12 and 16.  The government is aware of
its discovery obligations and will continue to fully comply with those obligations, including those
pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972),
the Jencks Act, 18 U.S.C. § 3500, the Federal Rules of Criminal Procedure and other applicable
laws.

Of course, as you know after we received your letters of October 22, 2019 and December
19, 2020, we negotiated and agreed upon a detailed scheduling order that the Court entered on
January 28, 2020.  *See* ECF No. 27.  We believe the stipulated discovery deadlines in the order —

2

including our agreement to provide you with early disclosure of all FBI 302s four months before trial and *Jencks* material two months before trial — resolve most of your requests.

Moreover, we have provided you with extensive and organized discovery, and will continue to do so as materials become available for production. In addition to the documents produced today, on October 24, 2019, we produced approximately 509,164 documents in a text-searchable database organized by Bates numbering and in a load-ready format compatible with commercial discovery software. The government also produced an index of the materials contained in the database summarizing the sources of relevant documents.

Separately, the government has also provided a flash drive containing a subset of particularly relevant documents including:

(1) Approximately 600 "hot documents," which were identified as being of potential significance to the investigation.

(2) Your client's statements, including:

   a. A transcript and audio file of his statements to FBI and EPA-CID agents on August 3, 2016;

   b. Transcripts and exhibits of his testimony before the Securities and Exchange Commission ("SEC") on March 20, 2019 and May 2, 2019; and

   c. a transcript and exhibits of his deposition testimony in the matter *Pirnik et. al. v. Fiat Chrysler Automobiles N.V., et. al.*, No. 1:15-cv-07199-JMF, on June 22, 2018;

(3) folders containing documents that correlate to the specific allegations, counts, and overt acts charged in the Indictment returned by the grand jury on September 18, 2019; and

(4) an index identifying transcripts of civil depositions produced by FCA which were in turn produced in the aforementioned database.

After the grand jury returned the 38-page speaking Indictment, you requested a meeting with the government to better understand the evidence supporting the charges filed against your client. In response, we agreed to provide you and your client with a reverse proffer. On December 20, 2019, we met with you and your client for more than three hours during which time we discussed relevant evidence and the theories of prosecution detailed in the Indictment, and we left you a binder of approximately 100 relevant documents which were discussed during the meeting.

In light of all of the above, we will not be providing you with a bill of particulars; you are unquestionably on notice of the charges in this case with more than sufficient information to prepare for trial. Should the government identify any additional documents or materials subject to disclosure, we will provide those materials to you in a timely manner, consistent with our obligations and our agreed-upon scheduling order.

We further address your requests more specifically below.

**Prosecution Team**

In your December 19, 2019 "*Brady/Giglio* Request" letter, you request all "documents and information" in the "possession, custody, and control of the Government." Your letter suggests that the prosecution team in this case has discovery obligations with respect to files maintained by the U.S. Environmental Protection Agency ("EPA"), U.S. Securities and Exchange Commission ("SEC"), the California Air Resources Board ("CARB"), and "any federal, state, or local agencies that have provided assistance to your offices or concurrently investigated the matters at issue in this proceeding, or to which you otherwise have access."

The government will fully comply with its discovery obligations as to documents within the possession, custody, or control, of the prosecution team. The prosecution team in this case includes dedicated attorneys from the United States Attorney's Office for the Eastern District of Michigan ("U.S. Attorney's Office"), the U.S. Department of Justice, Criminal Division, Fraud Section ("Fraud Section"), and the U.S. Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section ("ECS"), as well as dedicated law enforcement officers from the Federal Bureau of Investigation ("FBI"), and the EPA's Criminal Investigation Division ("EPA-CID"). The prosecution team does not include civil regulatory agencies such as the EPA, SEC and CARB, or any state and local agencies, and any request for documents maintained by these third parties are necessarily not within our possession, custody, or control.

**Specific Requests To Identify *Brady/Giglio* Material**

In your "*Brady/Giglio* Request" letter, you also request that we identify 48 separate categories of material. For each of these 48 requests, you ask us to "provide a separate response to each discovery request" and "indicate the number (or letter) of the request to which you are responding."

The government is aware of its obligations under *Brady* and *Giglio* and will fully comply with those obligations, however, we respectfully decline to further prepare the materials for your trial defense. It is well-settled that "the government is under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence." *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 538 (2010). In addition, as described above, the government has provided discovery in a searchable and well-organized format with accompanying indices to aid in your review. *See United States v. Warshak*, 631 F.3d 266, 297–99 (6th Cir. 2010) (holding the government was not required under *Brady* to "sift fastidiously through the evidence … in an attempt to locate anything favorable to the defense" where the government provided millions of pages of text searchable electronic discovery).

4

**Additional Specific Requests**

In your December 19, 2019 "Rules 12 and 16 Discovery Request" letter and your April 20, 2020 "Supplemental Discovery" letter, you have made a number of additional specific requests. The government will fully comply with its discovery obligations pursuant to the Federal Rules of Criminal Procedure. While the government disagrees that it is obligated under the Federal Rules of Criminal Procedure to respond to your specific requests, we provide the following additional information.

December 19, 2019 letter requests

You requested "any notes taken at the September 11, 2018 interview of Mr. Palma." The prosecution team is not in possession of any such notes.

You requested "that the Government identify each of the documents shown to Mr. Palma during the August 3, 2016 "knock-and-talk" interview by agents from the Federal Bureau of Investigation and EPA's Criminal Investigation Division." In this interview, agents showed Mr. Palma an email beginning with Bates number DOJ-PROD-0002966905 and a presentation beginning with Bates number DOJ-PROD-0002966909.

You requested "all materials provided by counsel for FCA (Sullivan & Cromwell, King & Spalding, or Arnold & Porter) to DOJ during meetings, presentations, and "downloads" or summaries of witness interviews." We decline to produce "all materials" provided to the government by FCA's lawyers. However, as we have discussed we will be providing you with information as to what the government was told certain individuals in turn told FCA's lawyers. We do not believe that this third level hearsay constitutes *Jencks* but we are nevertheless producing it to you at our agreed upon *Jencks* deadline.

You requested "the video recordings of the March 20, 2019 and May 2, 2019 depositions of Mr. Palma by the Securities and Exchange Commission." As you know, you received transcripts of both of these depositions in our October 22 production. To our knowledge, the March 20, 2019 SEC deposition of Mr. Palma was not video recorded. We are producing the video recording of the May 2, 2019 deposition today at DOJ-PROD-0004513357 through DOJ-PROD-0004513360.

You requested the 2013 SCR test results referenced in paragraph 55 of the Indictment. A copy of the cover email and attached PowerPoint referenced in paragraph 55 of the Indictment have already been produced to you at Bates DOJ-PROD-0000365697 and DOJ-PROD-0000365717, with an English translation of the cover email located at DOJ-PROD-0000365708. A copy of the English translation of the cover email and the PowerPoint were also provided to you and discussed during the December 20, 2019 Reverse Proffer.

You requested the "April 21, 2017 response from FCA to EPA referenced in paragraph 94 of the Indictment." We understand this request relates to Paragraph 95 of the Indictment, which refers to the response FCA submitted in response to the EPA's request for information

5

pursuant to Section 208 of the Clean Air Act.  Copies of this document have already been
produced to you at Bates DOJ-PROD-0000935252 and DOJ-PROD-0004242115.

You requested "the September 27, 2015 email from Mr. Palma referenced in paragraph
67 of the Indictment."  A version of that email has already been produced to you at Bates DOJ-
PROD-0001276227.  A copy of that email and the attachment were also provided to you and
discussed during the December 20, 2019 Reverse Proffer.

You requested "that the Government disclose copies of the prior criminal records, if any,
of any alleged co-conspirators, and any evidence of other crimes, wrongs, or acts allegedly
committed by Mr. Palma, his agents, or his alleged co-conspirators, that the Government may
offer into evidence at trial."  To our knowledge, Mr. Palma has no prior criminal record.  We
have not yet identified any potential evidence that we intend to introduce at trial pursuant to
Federal Rule of Evidence 404(b).  Pursuant to the scheduling order, we will provide such notice,
to the extent necessary, no later than 60 days before trial.

April 20, 2020 letter requests

In your April 20, 2020 letter, you attached a January 2, 2017 letter from attorneys in the
Civil Section of the Environmental & Natural Resources Division, writing on behalf of the
EPA's Office of Civil Enforcement, regarding the preservation of FCA documents.  You
requested "all communications between FCA (or its attorneys) and DOJ or EPA concerning the
failure to preserve documents regarding the Subject Vehicles."  As discussed above, the
individuals referenced in the January 2, 2017 letter are not members of the prosecution team.
However, we have located a letter dated March 10, 2017 written on behalf of FCA in response to
the January 2, 2017 letter you identified, which we have previously produced to you at DOJ-
PROD-0001334472.

You requested the "document Bates stamped 2016FCAGJS_9100238, which appears to
have been omitted from the government's October 23, 2019 production."  This document had not
been fully loaded to our document review platform at the time the October 23, 2019 production
was created and thus was not able to be produced at that time.  The document is included in the
government's rolling production of documents produced today and can be found at DOJ-PROD-
0004153929.

You requested "[a]ll transcripts and videos of depositions taken by the Securities and
Exchange Commission in connection with its investigation of the Subject Vehicles," including
twelve specific individuals.  In response to your request, the government in turn requested these
materials from the SEC, and the SEC in turn agreed to produce these materials to us.  When we
have the additional documents, we will produce them to you under separate cover.

**Request for Reciprocal Discovery**

The government requests all discovery to which it is entitled pursuant to the Federal Rules
of Criminal Procedure, including but not limited to:

1.      The opportunity to inspect and copy any tangible item or document that may be offered as an exhibit at trial, pursuant to Rule 16(b)(1)(A);

2.      The results of any examination or test that may be introduced by the defendant at trial, pursuant to Rule 16(b)(1)(B); and

3.      A written summary of any expert testimony that the defendant intends to use, including the expert's opinions, the bases and reasons for those opinions, and the expert's qualifications, pursuant to Rule 16(b)(1)(C).

4.      Any materials or information countenanced by Rules 12.1, 12.2, and 12.3 including, but not limited to, notice of whether any defendant intends to claim an alibi (for all dates listed in the indictment), insanity, and/or public authority defense at trial.

*   *   *

If you have any questions, please do not hesitate to contact us.

Sincerely,

Henry Van Dyck
Principal Assistant Chief
Kyle W. Maurer
Jason M. Covert
Trial Attorneys
Market Integrity and Major Frauds Unit
U.S. Department of Justice
Criminal Division, Fraud Section

John K. Neal
Chief, White Collar Crime Unit
Assistant United States Attorney
Timothy J. Wyse
Assistant United States Attorney
Eastern District of Michigan

Todd W. Gleason
Senior Trial Attorney
Environmental Crimes Section
Environment & Natural Resources Division
United States Department of Justice

U.S. v. Emanuele Palma Discovery Index - Production 2

| Production BEGDOC | Production ENDDOC | Source | Description |
|---|---|---|---|
| DOJ-PROD-0004153804 | DOJ-PROD-0004153928 | EPA Civil | FCA Produced Emails |
| DOJ-PROD-0004153929 | DOJ-PROD-0004153929 | FCA US LLC | Grand Jury Subpoena Return Productions |
| DOJ-PROD-0004153930 | DOJ-PROD-0004170784 | EPA OTAQ | FCA COC Submissions from the EPA Verify System |
| DOJ-PROD-0004170785 | DOJ-PROD-0004247219 | FCA US LLC | Grand Jury Subpoena Return Productions |
| DOJ-PROD-0004247220 | DOJ-PROD-0004513356 | ENRD Civil | EPA Documents Produced in IN RE: CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION, No. 3:17-md-02777-EMC |
| DOJ-PROD-0004513357 | DOJ-PROD-0004513360 | SEC | Video recordings of Emanuele Palma's May 2, 2019 SEC testimony. |
| DOJ-PROD-0004513361 | DOJ-PROD-0004513505 | FCA US LLC | Grand Jury Subpoena Return Productions |

# Exhibit B



LAW OFFICES

MOGILL, POSNER & COHEN

Davis Polk & Wardwell LLP      212 450 4000 tel
450 Lexington Avenue
New York, NY 10017

27 E FLINT STREET. 2ND FLOOR
LAKE ORION, MICHIGAN 48362
(248) 814-9470 PH
(248) 814-8231 FX

May 5, 2020

Re:      *United States v. Emanuele Palma* (Case No. 2:19-cr-20626-NGE)

<u>Via Electronic Mail</u>

Henry P. Van Dyck
Kyle W. Maurer
Jason M. Covert
U.S. Department of Justice
Fraud Section, Criminal Division
1400 New York Avenue, N.W.
Bond Building, 4th Floor
Washington, DC 20005

John K. Neal
Timothy Wyse
U.S. Attorney's Office
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, MI 48226

Todd W. Gleason
U.S. Department of Justice
Environmental Crimes Section
601 D Street, N.W., 2nd Floor
Washington, DC 20004

Dear Counsel:

We write in response to your letter dated April 22, 2020, regarding discovery in the above-captioned matter.  Among other things, we write to set forth our position on the question of what constitutes the "prosecution team" and, in particular, our view of the controlling law.

The government's April 22 letter notes that the "prosecution team" in this matter is limited to "dedicated attorneys" and "dedicated law enforcement officers" within certain components of the U.S. Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), and the Environmental Protection Agency ("EPA").  Further, the letter asserts that "civil regulatory agencies" are not part of the "prosecution team."[1]

These assertions are, in our view, inconsistent with the controlling case law.  We continue to believe that, as applied to the facts of this case, the "prosecution team" encompasses all individuals involved in the years-long investigation into the two core issues underlying the allegations in the

---

[1] *See* April 22, 2020 Letter at 3.

Henry P. Van Dyck, et al.                                                                                     May 5, 2020

2

Indictment: whether the "Subject Vehicles"—as defined in the Indictment[2]—contained defeat devices, and whether the information that FCA employees conveyed to regulators about the Subject Vehicles was accurate and complete.  At a minimum, the "prosecution team" must include all personnel from EPA, DOJ, the Securities & Exchange Commission ("SEC"), and California Air Resources Board ("CARB") who participated in this investigation.

In considering whether a government agency's documents are sufficiently under the prosecution's "control" for purposes of Rule 16 and *Brady*, courts look to whether the prosecutor has "knowledge of and access to" those documents.  *See United States v. Mills*, No. 16-CR-20460, 2019 WL 3423318, at *3 (E.D. Mich. July 30, 2019); *United States v. Skaggs*, 327 F.R.D. 165, 174 (S.D. Ohio 2018).  "The prosecution is deemed to have knowledge of and access to material that is in the possession of any federal agency that participated in the investigation that led to defendant's indictment, or that has otherwise cooperated with the prosecution."  *Id.*; *see Mills*, 2019 WL 3423318, at *3.

This includes civil agencies.  *See, e.g.*, *United States v. Tyson*, No. 1:18CR708, 2020 WL 255533, at *2 (N.D. Ohio Jan. 16, 2020) (finding that "civil investigators," including various agencies' inspectors general, were part of prosecution team); *United States v. Happ*, No. CR2-06-129(8), 2008 WL 5101214, at *3 (S.D. Ohio Nov. 25, 2008) (same, with respect to the SEC); *United States v. W. R. Grace*, 401 F. Supp. 2d 1069, 1078 (D. Mont. 2005) (rejecting government's argument in environmental crimes case that prosecution team was limited to DOJ and EPA-CID, and concluding that discovery obligations extended to other regulatory agencies, including EPA).  In certain circumstances, courts have also extended disclosure obligations to state and local agencies.  *See Mills*, 2019 WL 3423318, at *3 ("[W]hen the Government knows that some other agency had some involvement in the investigation of a defendant, including state and local investigative agencies, the Government must determine if those other agencies have information embraced within Rule 16(a)(1)(E)." (internal quotation marks omitted)).

In this case, individuals from several EPA components—including its Criminal Investigation Division, which the government acknowledges is part of the "prosecution team"—investigated the strategies described in the Indictment.  Similarly, enforcement attorneys from DOJ's Environmental and Natural Resources Division ("ENRD"), whom the government appears to characterize as part of a "civil regulatory agency," questioned Mr. Palma and dozens of other witnesses about, and sued FCA over, the same issues at the heart of this prosecution.  Individuals from these agencies unquestionably "participated in the investigation that led to defendant's indictment."  *Skaggs*, 327 F.R.D. at 174.

For example, members of EPA's Air Enforcement Division attended the June 29, 2016 meeting with FCA, at which, the Indictment alleges, Mr. Palma made misstatements.[3]  The Air Enforcement Division, like EPA's Criminal Investigation Division, sits within EPA's Office of Enforcement and Compliance[4]—whose Assistant Administrator was quoted in the press release announcing Mr. Palma's indictment.[5]  Attorneys from ENRD's Environmental Enforcement Section

---

[2] *See* ¶ 7.

[3] *See* ¶ 72.

[4] *See* Environmental Protection Agency, "Organizational Chart for the Office of Enforcement and Compliance (OECA)," https://www.epa.gov/aboutepa/organization-chart-office-enforcement-and-compliance-assurance-oeca.

[5] Department of Justice, "Senior Manager at Fiat Chrysler Automobiles Charged in Connection With a Conspiracy to Mislead Regulators and the Public about Diesel Vehicle Emissions" (Sept. 24, 2019),

Henry P. Van Dyck, et al.                                                    May 5, 2020

3

also attended the June meeting, along with multiple members of CARB, who had been investigating the strategies underlying the Indictment for years and were co-plaintiffs in the suits brought by DOJ. Notably, none of the members of the prosecution team as defined in the government's letter were present at the June 29, 2016 meeting, which means that individuals from these "civil regulatory authorities" necessarily "cooperated with the prosecution," *id.*, to provide information about the charges eventually brought against Mr. Palma.

The prosecution team chose to include allegations about the June 29, 2016 meeting in the Indictment; the individuals from DOJ, CARB, and EPA who were centrally involved in that meeting cannot now be considered part of a distinct investigation in order to limit the scope of disclosure obligations.  That is particularly true where those individuals are part of the same EPA office or DOJ division as the attorneys and agents the government has acknowledged are part of the prosecution team.  *Cf. United States v. Myr*, No. 14-20633 (NGE), 2015 WL 5042321, at *4 (E.D. Mich. Aug. 26, 2015), *aff'd*, 663 F. App'x 433 (6th Cir. 2016) (concluding that DOJ civil complaint was statement by a party opponent for hearsay purposes because it was "filed in court by a federal prosecutor who spoke for the same Justice Department that was prosecuting Defendant" (internal quotation marks omitted)); *id.* at *3 ("The Justice Department's various offices ordinarily should be treated as an entity, the left hand of which is presumed to know what the right hand is doing.").

Similarly, materials in the government's initial production reflect that SEC has been deposing witnesses involved in the events detailed in the Indictment's allegations since at least June 2018.[6] The government acknowledged during our reverse proffer that it had knowledge of, and access to, Mr. Palma's two SEC depositions and that the government reviewed those depositions before filing the Indictment.  Those depositions focused on the same calibration strategies that form the basis of the allegations in the Indictment.  That overlap is reinforced by the fact that the government quoted or cited Mr. Palma's SEC testimony six times during our reverse proffer session.

Accordingly, we renew our requests as directed to the prosecution team, as defined to include all relevant individuals from DOJ, EPA, CARB, and SEC.  In particular, we renew our requests for:

- Notes, summaries, memoranda, or other documents that contain statements that Mr. Palma made to DOJ, EPA, or CARB regarding the Subject Vehicles, including any statements made at meetings on November 18, 2015; November 25, 2015; December 14, 2015; January 13, 2016; June 29, 2016; and September 11, 2018.  If notes or other materials do not exist with respect to statements made at one or more of these meetings, we request that the government identify the dates of such meetings and the asserted reason any statements by Mr. Palma were not memorialized.

- Documents reflecting emissions testing performed on the Subject Vehicles, including any tests purporting to measure emissions during "real world" driving (*see, e.g.*, Indictment ¶¶ 34-39).

- All communications from 1/1/2017 to 1/1/2018 between FCA and EPA or CARB regarding agency approval of "tEngine," "modeled engine temperature," or "tCoolant" in the Subject Vehicles' calibrations for subsequent model years.

---

https://www.justice.gov/opa/pr/senior-manager-fiat-chrysler-automobiles-charged-connection-conspiracy-mislead-regulators-and.

[6] *See* DOJ-PROD-0002629583.

Henry P. Van Dyck, et al.                                        May 5, 2020

4

- A review of the full prosecution team's files for the categories of information listed in our December 19, 2019 *Brady* request letter.

    Finally, we renew our request for all documents provided by FCA counsel to the government during meetings or presentations.

*        *        *

    Please let us know if you have any questions regarding these requests or wish to discuss them.

                      Respectfully,

                      /s/ Greg D. Andres
                      Greg D. Andres
                      Neil H. MacBride
                      Paul Nathanson
                      Davis Polk & Wardwell LLP

                      /s/ Kenneth M. Mogill
                      Kenneth M. Mogill
                      Mogill, Posner & Cohen

# Exhibit C



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
NATIONAL VEHICLE AND FUEL EMISSIONS LABORATORY
2565 PLYMOUTH ROAD
ANN ARBOR, MICHIGAN 48105-2498

OFFICE OF
AIR AND RADIATION

CD-15-24 (LDV)

September 25, 2015

**SUBJECT:     EPA Conducted Confirmatory Testing**

Dear Manufacturer:

Per the regulations of 40 CFR §86.1809, EPA may test or require testing on any vehicle at a designated location, using driving cycles and conditions that may reasonably be expected to be encountered in normal operation and use, for the purposes of investigating a potential defeat device.  Such testing can be expected in addition to the standard emissions test cycles when Emissions Data Vehicles (EDV), and Fuel Economy Data Vehicles (FEDV) are tested by EPA.

Manufacturers should expect that this additional testing may add time to the confirmatory test process and that additional mileage may be accumulated on the EDVs and FEDVs.

The regulations of 40 CFR §86.1836 also require manufacturers to supply production vehicles for testing upon request.

If you have any questions, please contact your certification team representative or Linc Wehrly at 734-214-4286 or by email at wehrly.linc@epa.gov.

Sincerely,

Byron J. Bunker, Director
Compliance Division
Office of Transportation and Air Quality

# Exhibit D



**U.S. Department of Justice**

Criminal Division

---

*Fraud Section*                                          *Washington, D.C. 20530*

June 8, 2020

Greg D. Andres, Esq.
Neil H. MacBride, Esq.
Davis Polk & Wardwell LLP
901 15th Street NW
Washington, DC 20005

Kenneth M. Mogill, Esq.
Mogill, Posner & Cohen
27 E. Flint Street, 2nd Floor
Lake Orion, MI 48362

Re:   *United States v. Emanuele Palma,* Case No. 2:19-cr-20626-NGE-DRG

Dear Messrs. Andres, MacBride and Mogill:

We are writing to provide notice with respect to certain testimony the government may present through Byron Bunker, the Director of the Compliance Division of the U.S. Environmental Protection Agency's (EPA) Office of Transportation and Air Quality (OTAQ). Please note that while we have summarized Mr. Bunker's potential testimony through this notice, the government does not believe that such testimony constitutes expert testimony pursuant to Federal Rules of Evidence 702, 703, and 705. Instead, the government believes that such testimony is properly admissible through Mr. Bunker without regard to his expertise as he is a fact witness who was personally involved with the certification process for the Subject Vehicles, and any opinions he offers are admissible as lay opinion testimony pursuant to Federal Rule of Evidence 701. Thus, our notice to you is offered out of an abundance of caution, and because our agreed upon scheduling order provides that any potential expert testimony must be disclosed four months prior to trial, and in advance of any evidentiary rulings from the court.

A.   <u>**Qualifications**</u>

A copy of Mr. Bunker's curriculum vitae ("CV") setting out his qualifications in greater detail is attached.

B.   <u>**Bases and Reasons for Opinions**</u>

Mr. Bunker is the Director of the Compliance Division of the EPA's Office of Transportation and Air Quality (OTAQ). In this role, Mr. Bunker is familiar with the testing and certification of the Subject Vehicles at issue in this case. He also spoke and met with FCA

employees, including Mr. Palma, after the EPA issued FCA certificates of conformity for the Subject Vehicles.

Mr. Bunker's testimony will include an overview of the relevant regulatory framework, as well as the results and conclusions drawn from the EPA's testing of the Subject Vehicles. Mr. Bunker will testify based on his familiarity with the testing and certification process with respect to the Subject Vehicles, as well as his years of experience interpreting, applying, and advising others on compliance with the applicable laws, rules, and regulations governing the testing and certification of motor vehicles.

In addition, Mr. Bunker will testify in response to hypothetical questions about information that Mr. Palma caused to be presented to Mr. Bunker and the EPA, as well as information that Mr. Palma caused not to be disclosed to Mr. Bunker and the EPA. These hypothetical questions will ask Mr. Bunker to explain through his testimony whether he and the EPA relied on certain facts, and whether other facts that were not disclosed could have been important to him and the EPA in making decisions and acting with respect to the Subject Vehicles.

## C. **Testimony**

### 1) **The relevant regulatory framework**

We expect that Mr. Bunker will testify about the regulatory framework and the role of the EPA with respect to the manufacture and sale of automobiles in the United States (*see* Indictment ¶¶ 9-23), including:

- The organizational structure of the EPA;

- The regulatory scheme by which the EPA operates and carries out its function;

- The purpose of the certificate of conformity process;

- The role of regulations in Mr. Bunker's performance of his duties;

- The requirements that automobile manufacturers must meet in order to obtain a certification for vehicles, including the interplay between federal and California requirements;

- The definition of an AECD and its relevance to the certification process;

- The information that is required in an application for a certificate of conformity and its importance to Mr. Bunker in the performance of his duties and to the EPA; and

- The roles and responsibilities of Mr. Bunker and his team in evaluating whether to grant an automobile manufacturer a certificate of conformity for its vehicles.

### 2) **Testimony about emissions test results from the Subject Vehicles**

We expect Mr. Bunker to testify as to the tests performed by the EPA on the Subject Vehicles, including:

- A description of the EGR system, the SCR system, and the valve train cleaning routine on the Subject Vehicles, and how those systems impacted emissions on the Subject Vehicles as reflected by EPA Testing (*see* Indictment at ¶¶ 24-29);

- A description of the emissions tests performed by the EPA on the Subject Vehicles, and the results of those tests; and

- The EPA's conclusions about the Subject Vehicles, including that the vehicles produced significantly less NOx emissions on the federal test procedures than when the Subject Vehicles were being driven by FCA's customers "off cycle" or in real world driving conditions, and that these results were not consistent with Mr. Bunker's or the EPA's expectations and regulatory requirements.

   **3) Testimony about whether Mr. Bunker and the EPA relied on the information Mr. Palma caused to be presented to the EPA, and whether other facts that were not disclosed could have been important to Mr. Bunker and the EPA in making decisions and taking action with respect to the Subject Vehicles**

We expect to elicit testimony from Mr. Bunker about the information that Mr. Palma caused to be submitted to the EPA, and whether Mr. Bunker and the EPA relied on that information. We also expect that Mr. Bunker will be asked to respond to hypothetical questions as to the potential effect of the information that was not disclosed to Mr. Bunker and the EPA on the EPA's processes and decision-making. These hypothetical questions would include questions as to why Mr. Bunker and the EPA would have wanted to know certain information, and how that information could have impacted Mr. Bunker and the EPA's review of FCA's applications for certificates of conformity. We anticipate that Mr. Bunker's answers to these questions would be based on his experience and personal knowledge of the Subject Vehicles, as well as experience and personal knowledge he acquired and applied through his employment with the EPA.

*   *   *

If you have any questions, please do not hesitate to contact us.

Sincerely,

*/s/ Henry Van Dyck*
Henry Van Dyck
Principal Assistant Chief
Kyle W. Maurer
Jason M. Covert

Trial Attorneys
Market Integrity and Major Frauds Unit
U.S. Department of Justice
Criminal Division, Fraud Section

John K. Neal
Chief, White Collar Crime Unit Assistant
United States Attorney
Timothy J. Wyse
Assistant United States Attorney
Eastern District of Michigan

Todd W. Gleason
Senior Trial Attorney
Environmental Crimes Section
Environment & Natural Resources Division
United States Department of Justice

# Byron J. Bunker

Daytime Phone: (734) 214-

Bunker.Byron@epa.gov

## Work Experience:

**Division Director, Compliance Division**                    **Oct 2011 – Present**
US Environmental Protection Agency                    Grade Level: SES
Ann Arbor, MI

Oversee all compliance efforts related to implementation of mobile source engine, vehicle and fuels programs.  Issue approximately 5,000 vehicle and engine certificates annually and administer a fuels program that reviews more than 6 million reports annually from fuel producers and operators.  Oversee a staff of more than 70 individuals split between locations in Washington, DC and Ann Arbor, MI.
Set priorities for the division and work to create a shared vision of our dual roles to provide compliance assistance and compliance assurance.

Accomplishments:
- Work with the six center directors to create budget priorities that align with the Agency's priorities focusing in particular on workflow efficiency improvements through Information Technology (IT) development and greater in-use compliance effectiveness through emissions testing programs.
- Direct vehicle and engine compliance strategy development and implementation.
- Oversee an $10 million dollar budget and track spending against budget priorities.
- Engage in high level dialogue with the full range of Agency stakeholders, including the regulated industries, industry trade groups, the non-governmental organization (NGO) community, and other Federal and State agencies.
- Set hiring priorities and oversee recruitment of new staff in support of program priorities.
- Lead efforts to implement new and existing light-duty and heavy-duty engine and vehicle standards including the latest greenhouse gas emissions standards.
- Implement and oversee reporting structures to track engine and vehicle certification processes
- Oversee E15 fuel registration and approval process.
- Issue technical and economic hardship waivers under both fuels and engine programs.
- Support enforcement actions in the renewable fuels credit program.
- Support enforcement actions in the engine and vehicles program.
- Oversee EPA defect and recall programs for vehicles and engines.
- Oversee fuel and fuel additives registration program.

**Center Director, Heavy-Duty Onroad Center**                    Aug 2006 – Sept 2011
US Environmental Protection Agency                               Grade Level: GS-15
Ann Arbor, MI

Responsible for all regulatory development programs relating to heavy-duty engines and vehicles. Manage a staff with 17 direct reports including the highest fraction of new employees of any center in the division.

Accomplishments:

- Created biweekly center meetings and significant action report system to manage group and facilitate staff development. Gave leadership opportunities to staff on all aspects of projects to create a sense of empowerment and help develop staff initiative.
- **Heavy-Duty GHG Rule:** Led rulemaking effort to develop first ever greenhouse gas (GHG) emission standards for heavy-duty engines and vehicles. Created and set the vision for the program including initiating the first use of a computer based vehicle model for certification testing. Worked collaboratively with stakeholders to create support for the program culminating in letters of support to develop the rule and created an environment where prominent industry leaders chose to stand with the President to announce the final rulemaking. Coordinated rulemaking efforts with the National Highway Traffic Safety Administration (NHTSA) and the California Air Resources Board (CARB). Made high level presentations to the EPA Administrator, the Office of Management and Budget, the President's Council of Economic Advisors, the NHTSA Administrator and a wide range of industry and NGO stakeholders. Worked to promote international harmonization with presentations and meetings with the European Commission, European truck and engine manufacturers, international NGOs, the Japanese Ministry of Land Infrastructure and Transport, Japanese truck and engine manufacturers, Transport Canada and Environment Canada.
- **C3 Rule and IMO Treaty:** Led rulemaking effort and international negotiations to create an Emissions Control Area (ECA) extending 200 nautical miles around the United States that will require ocean going vessels to reduce emissions by approximately 90 percent through the use of cleaner fuels. Led and coordinated a twenty-five plus person rulemaking team to complete a comprehensive rulemaking analysis against a very aggressive schedule. Collaborated with Coast Guard, US State Department, the National Oceanic and Atmospheric Administration, Environment Canada, and Transport Canada to develop a proposal to amend the International Maritime Organization (IMO) Marine Pollution (MARPOL) Annex VI treaty creating the ECA. Built an international coalition from a wide range of stakeholders including international shipping organizations, the European Commission, individual European member states including Germany, France, United Kingdom, Norway, and Denmark, and international NGOs to help push for passage of the proposed Annex VI amends at IMO. Made high level presentations to the International Maritime Organization, the European Commission, individual country delegations from most of Europe, Japan, and Singapore.
- **Locomotive and Marine Diesel Rule:** Led rulemaking effort to set new emissions standards for locomotive and smaller domestic marine engines. Led and coordinated a rulemaking team with

more than 25 people.  Managed a highly contentious stakeholder relationship with General Electric (GE) Locomotive leading to several high stakes meetings and presentations made to GE and EPA senior management.  Efforts eventually resulted in GE's support of the Agency proposal and post rulemaking invitations to speak at GE about the program.  Worked with the American Waterways Operators (AWO) and the Engine Manufacturer's Association (EMA) to build support for the rulemaking effort.  Developed a novel engine rebuild provision designed to address the significant emissions issue for legacy marine diesel products.

- **Light-Duty 2012-2016 Rulemaking Team:** Supported rulemaking team with technical and economic analyses to estimate indirect costs for emission control technologies.  Represented the Agency in high level meetings with the Office of Management and Budget on these analyses.
- **Light-Duty 2017-2025 Rulemaking Team:** Supported rulemaking proposal with technical analyses and stakeholder interactions to evaluate the potential for light-duty pickup trucks to substantially reduce greenhouse gases and improve fuel efficiency in the 2017-2025 timeframe.
- **Heavy-Duty Onboard Diagnostics (HDOBD) Rule:**  Responsible for the overall rule development to create new onboard diagnostic standards for heavy-duty trucks and engines.


**Mechanical Engineer**                                          **Feb 1999 – Aug 2006**

US Environmental Protection Agency                      Grade Level: GS-13 & 14
Ann Arbor, MI

Mechanical engineer and team leader on regulatory programs and emissions inventory modeling programs in the Assessment and Standards Division of EPA's Office of Transportation and Air Quality.

Accomplishments:

- **Diesel Progress Reviews**:  Led division efforts to monitor technical developments for implementation of the heavy-duty 2007 (HD 2007) rulemaking standards and the Nonroad Tier 4 standards.  In both cases, the challenging technology forcing standards led to ongoing pressure for the Agency to reconsider the standards.  In response, led an ongoing review of technology development organizing multiple technology review tours to development facilities throughout the US, in Europe and in Japan.  Produced two technology review reports demonstrating that technology development was progressing as expected.  Made numerous high level presentations on technology development to the European Commission and Japanese government ministries.
- **HD 2007 Rule & Nonroad Tier 4 Rule**:  Led tech feasibility analysis and compliance cost analyses for the HD2007 rulemaking and the Nonroad Tier 4 rulemaking.  Primary author for preamble, regulatory impact analysis and response to comment sections related to technological feasibility and cost.  Engaged in technical outreach with the regulated industry and NGO community.  Made presentations to EPA management and the Office of Management Budget regarding all aspects of the analyses.
- **Engine Test Programs**: NOx adsorber demonstration team that demonstrated the potential to meet the HD2007 emission standards in 2000.

- **Nonroad Tier 3 Technology Review**:  Comprehensive review of the need for fuel sulfur control to meet the Tier 3 nonroad engine standards.
- **Tier 2 Rulemaking Team:**  Technical analysis of the potential for light-duty diesel engines to meet the proposed Tier 2 standards.

**Senior Systems Engineer**                                                    **Jun 1997 – Jan 1999**

European Engine Alliance (EEA) / Cummins Engine Company
High Wycombe, United Kingdom

Senior systems engineer responsible to integrate the electronic control system hardware and software for a new engine design.

Accomplishments:

- Supported prototype engine builds and vehicle tests at manufacturing plants and research facilities in Italy, Switzerland, Germany, the United States and the United Kingdom.
- Developed software calibrations to improve vehicle performance and satisfy customer expectations.
- Managed software release process across multiple product release processes.
- Implemented control system software and calibrations for the first application of a high pressure common rail fuel system to a heavy duty engine.
- Coordinated work of multinational engineering team across multiple facilities.
- Managed wiring harness and sensor release process

**Engineer – Advanced Engineering Department**                    **Aug 1994 – Jun 1997**

Cummins Engine Company
Columbus, IN

Research engineer in advanced concepts department.  Worked to prove and develop new technologies for diesel and spark ignited (natural gas) engines.  The work included both individual (largely self directed) project work as well as project work in a team environment.

Accomplishments:

- Project leader responsible for development of an electro-magnetically actuated valve system for a heavy-duty diesel engine.  Provided controls and performance specifications to Cummins' supplier Aura Systems, Inc and coordinated engineering work between Cummins Advanced Engineering Department, Aura Systems and Eaton Corporation.  Led systems level Failure Mode Effects Analysis (FMEA) of the system and of competing approaches from Ford Motor Company and others.
- Part of team that launched the first heavy-duty diesel engine in North America to use exhaust gas recirculation (EGR) to reduce emissions.  Worked to improve the reliability of the EGR valve and Throttle Position Sensor (TPS).

- Modified existing computer based control system to support newly developed prototype fuel system. Developed the control algorithms, wrote the control code, and tested the complete system including fuel system hardware.
- Member of fuel system design and development team. Contributed to injector design elements including injector needle, tracked prototype hardware procurement, system build, and tested prototype injector assemblies.
- Evaluation of cerium and platinum based fuel additives for passive diesel particulate filter (DPF) regeneration and emissions catalysis. Coupled with an experimental exhaust gas recirculation (EGR) system this program demonstrated EPA 2004 emissions performance levels in early 1997.
- Led a process improvement team to develop a database system to tract prototype engine builds and performance data. Completed the database programming using Microsoft Access.
- Received two patents for engineering products developed at Cummins.


**Graduate Research Assistant**                                    **Sept 1992 – July 1994**
Ray Herrick Laboratories, Purdue University
West Lafayette, IN

Developed models for both diesel and gasoline engines using system identification techniques, applied frequency domain control techniques to control an engine/dynamometer test cell and to regulate the idle speed of a port fuel injected gasoline engine.


**Student Engineer –**                                    **June-August 1990, 1991, & 1992**
Southwest Research Institute
San Antonio, TX

Self directed research to develop a lean burn NOx catalyst using ion-exchange techniques on zeolite coated catalyst substrates. Bench tested the catalysts using diesel exhaust and evaluated catalyst performance to reduce NOx emissions.

Designed and built engineering test stand fixtures for the qualification of automotive fuels, hydraulic fluids, and lubricants. Test stands included, Massey Ferguson Independent Power Take-Off Test Stand, Massey Ferguson Four-Square Gear Wear Test Stand, Port Fuel Injection Flow Metering Stand, and Fuel Injector Leak Stand.

## Education:

Master's of Science in Mechanical Engineering (MSME), Purdue University, West Lafayette, IN 1994
Thesis: *"Multi-variable Control of a Diesel Engine Dynamometer System"*

Bachelor of Science in Mechanical Engineering (BSME), Texas A&M University, College Station, TX 1992
Undergraduate Research Fellowship: *"A Parametric Study of Important Operating and Design Conditions for a Coal Water Slurry Diesel Engine."*

## Publications and Patents:

*Robust Multivariable Control of an Engine-Dynamometer System*, December 1994
American Society of Mechanical Engineers (ASME) Dynamic Systems and Control Division

*Robust Multivariable Control of an Engine-Dynamometer System*, March 1997
Journal of the Institute of Electrical and Electronics Engineers (IEEE)

Patent 6,779,339 – Method for NOx Adsorber Desulfonation in a Multi-Path Exhaust System
Patent 6,067,946 – Dual Pressure Valve Actuation System
Patent 6,056,264 – Solenoid Actuated Flow Control Valve Assembly

## Awards:

Partnership for Public Service, Federal Employee of the Year 2017 (with other VW team members)
Five Gold Medals for Exceptional Service
Two Siver Medals for Superior Service
Two Bronze Medals for Commendable Service
OTAQ "Q" Award for exceptional leadership
EPA Science Achievement Award in Engineering

# Exhibit E

**From:** Caballero, Kathryn
**Sent:** Monday, June 27, 2016 2:32 PM
**To:** Martel, Jonathan S.; Gross, Joel M.
**Cc:** Rende, Leigh (ENRD); Warren, Joe (ENRD); Meisenbach, Caitlin; Kiyota, Diane@ARB
**Subject:** FCA meeting logistics

Jonathan and Joel, we've finalized the logistics for our FCA meeting on Wednesday, June 29. As you have suggested, we'd like to start at noon ET. I've provided the foreign visitor information for Mr. Palma to our security team and will let you know if there are further questions. Our in-person attendees are:

Phill Brooks (AED)

Evan Belser (AED)

Kathryn Caballero (AED)

Eleanor Kane (AED)

Caitlin Meisenbach (AED)

Greg Orehowsky (AED)

Johanna Oh (AED)

Chris Grundler (OTAQ)

Byron Bunker (OTAQ)

Joel Ball (OTAQ)

Leigh Rende (DOJ)

Joe Warren (DOJ)

Annette Hebert (ARB)

ARB's Diane Kiyota will provide the names of those attending via the video link. We'd like to be able to provide those individuals any materials that you may present so that they can fully participate in the meeting. Will you be providing any materials in advance? If not, for any presentation materials, can you arrange for the materials to be sent via email to Diane Kiyota when the meeting begins so she

can share them with the ARB team?

Our agenda is fairly simple and identified below.

AGENDA:

- ∀ Welcome and Introductions
- ∀ FCA presentation in response to EPA May 27, 2016 letter
- ∀ EPA/DOJ questions
- ∀ CARB questions
- ∀ Next steps

Please let us know if you have any questions. Thanks.

Kathryn Pirrotta Caballero

Attorney-Advisor

U.S. EPA Office of Civil Enforcement

Air Enforcement Division

Mailing address:

U.S. Environmental Protection Agency

1200 Pennsylvania Avenue, NW (2242A)

Washington, DC 20460

Courier and express deliveries:

U.S. Environmental Protection Agency

Clinton Building - South

1200 Pennsylvania Avenue, NW

Room 1147A

Washington, DC 20004

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com

# Exhibit F



**U.S. Department of Justice**

Criminal Division

*Fraud Section*                                        *Washington, D.C. 20530*

May 15, 2020

<u>VIA EMAIL</u>

Greg D. Andres, Esq.
Neil H. MacBride, Esq.
Davis Polk & Wardwell LLP
901 15th Street NW
Washington, DC 20005

Kenneth M. Mogill, Esq.
Mogill, Posner & Cohen
27 East Flint Street, Floor 2
Lake Orion, MI 48362

Re: *United States v. Emanuele Palma* (Case No. 2:19-cr-20626-NGE-DRG)

Dear Messrs. Andres, MacBride and Mogill:

Enclosed please find additional discovery materials that the government is producing to you pursuant to Federal Rule of Criminal Procedure 16 and the Protective Order in the above-captioned case. The enclosed flash drive labeled as "U.S. v. Emanuele Palma, Production 3" and the disc labeled as "U.S. v. Emanuele Palma, Production 3a" contain discovery materials from our Relativity electronic document database in load-ready format. An index to the contents of the flash drive and cd is attached to this letter.

We will circulate the password for the flash drive via email. If you experience any difficulty in loading the Relativity database on your system or in locating materials within this production that you are interested in reviewing, please do not hesitate to contact me.

Sincerely,

_____/s/_____
Henry P. Van Dyck
Principal Assistant Deputy Chief
Kyle W. Maurer
Jason M. Covert Trial Attorneys
Market Integrity and Major Frauds Unit
U.S. Department of Justice
Criminal Division, Fraud Section

U.S. vs. Emanuele Palma Discovery Index - Production 3

| Production BEGDOC | Production ENDDOC | Source | Description |
|---|---|---|---|
| DOJ-PROD-0004513506 | DOJ-PROD-0004536271 | FCA US LLC | Grand Jury Subpoena Return Productions |
| DOJ-PROD-0004536272 | DOJ-PROD-0004536422 | General Motors | Grand Jury Subpoena Return Production (Documents related to Sam Winegarden) |
| DOJ-PROD-0004536423 | DOJ-PROD-0004544914 | SEC | Transcripts and Exhibits of testimony before the SEC |
| DOJ-PROD-0004544915 | DOJ-PROD-0004545046 | FCA US LLC | Grand Jury Subpoena Return Productions |
| DOJ-PROD-0004545047 | DOJ-PROD-0004545051 | DOJ | Interview Download of Emanuele Palma provided by Arnold & Porter |