UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EMANUELE PALMA,

    Defendant.

_____/

Case No. 19-20626

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT EMANUELE PALMA'S MOTION TO DISMISS COUNT 8 OF THE SUPERSEDING INDICTMENT [74]**

The matter is before the Court on Defendant Emanuele Palma's motion to dismiss Count 8 of the superseding indictment. (ECF No. 74.) The government opposes the motion, (ECF No. 78), and Defendant has filed a reply, (ECF No. 79). The Court held a hearing on the motion on July 29, 2021. For the reasons set forth below, the Court GRANTS Defendant's motion to dismiss.

**I.**    **Background**

In 2007, Defendant, an engineer who specializes in the calibration of diesel vehicle engines, began working for VM Motori, an Italian engine manufacturer which supplied diesel engines to automobile manufacturers around the world, including to Fiat Chrysler Automobiles ("FCA"). In 2012, Defendant moved to the Michigan office of VM Motori's North American affiliate to work directly with FCA to develop and calibrate a new diesel engine, which was used in the Model Year 2014-2016 versions of FCA's Jeep Grand Cherokee and Ram 1500 vehicles (the "Subject Vehicles"). VM Motori became a wholly

1

owned FCA subsidiary in 2013.  Defendant remained a VM Motori employee throughout the development of the Subject Vehicles and became a FCA employee in June 2016.

Under the Clean Air Act, automakers must apply for and receive a certificate of conformity from the U.S. Environmental Protection Agency ("EPA") for each model year of vehicle they wish to sell, which confirms that the vehicle complies with the relevant regulations, including emissions standards.  The EPA is an independent agency of the United States charged with implementing and enforcing standards for air quality, water quality, and individual pollutants.  To sell vehicles in the state of California, automakers must also satisfy standards established by the California Air Resources Board ("CARB"), which issues its own compliance certificate called an executive order.

Beginning in 2013, FCA sought, and ultimately received, the certificates of conformity and executive orders necessary to sell the Subject Vehicles.  Defendant was not a FCA employee at the time but worked with members of FCA's Regulatory Affairs and Certificate groups throughout the process.  In September 2015, the EPA informed FCA that it would perform additional emissions testing on FCA's vehicles.  In June 2016, FCA representatives met with officials from the EPA, CARB, and Department of Justice to discuss regulators' concerns.  Outside counsel delivered a PowerPoint presentation during that meeting.  Approximately one month later, after Defendant returned from visiting family in Italy, two federal agents—one from the FBI and one from the EPA—came to Defendant's home and questioned him for more than ninety minutes.

Three years later, the government indicted and arrested Defendant.  Defendant was charged in the original indictment with thirteen counts: one count of conspiracy to defraud the United States, violate the Clean Air Act, and commit wire fraud in violation of

18 U.S.C. § 371 (Count 1); six counts of violations of the Clean Air Act under 42 U.S.C. § 7413(c)(2)(A) (Counts 2-7); four counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 8-11); and two counts of making false statements in violation of 18 U.S.C. § 1001(a) (Counts 12-13).  (ECF No. 1.)  On November 17, 2020, the Court entered an order dismissing the wire fraud charges (Counts 8-11) along with Count 1 to the extent it charged Defendant with conspiracy to commit wire fraud.  (ECF No. 58.)  The government appealed that order but later moved to voluntarily dismiss the appeal.  The government subsequently filed a first superseding indictment, charging Defendant with the same counts that survived his first motion to dismiss along with a newly charged conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count 8).[1]  (ECF No. 64.)

According to both the original and superseding indictments, Defendant participated in a conspiracy to mislead regulators and customers about the emissions control systems in the Subject Vehicles.  More specifically, Defendant and his co-conspirators are alleged to have fraudulently calibrated the emissions control systems on the Subject Vehicles to produce less nitrogen oxide ("NOx") emissions on the federal test procedures (or driving "cycles") than when they were being driven by customers in the real world.  NOx is a regulated pollutant that is emitted when diesel fuels are burned.  One emissions control system used by FCA to control NOx emissions was an engine control system called Exhaust Gas Recirculation ("EGR").  As a general principle, an increase in the EGR rate will reduce NOx formation in the engine but also reduce fuel economy, while a reduction in the EGR rate will increase NOx formation in the engine but also increase fuel economy.

---

[1] The superseding indictment also charged two new defendants with some of the counts.  Those defendants have not yet appeared in this case and are not parties to the present motion.

Thus, according to the superseding indictment, without the "cycle detection" or "cycle beating" undertaken by Defendant and his co-conspirators, the Subject Vehicles would have been unable to pass the emissions portions of the federal testing procedures and also receive a fuel efficiency rating that could be marketed to FCA's potential customers as "best in class." Defendant allegedly engaged in deceptive and fraudulent conduct to conceal the emissions impact and function of the emissions control systems from regulators and customers by (a) submitting false and misleading applications to regulators, (b) making false and misleading representations to regulators both in-person and in response to written requests for information, and (c) causing false and misleading representations to be made to the public about the Subject Vehicles, including that the Subject Vehicles were equipped with fuel efficient "clean EcoDiesel engine[s]" that reduced emissions and were environmentally-friendly.

The original indictment alleged that the purpose of the conspiracy was for Defendant and his co-conspirators to (a) make and cause others to make false and misleading representations to FCA's Regulators in order to obtain regulatory approval to sell the Subject Vehicles in the United States; (b) make and cause others to make false and misleading representations to FCA's customers and the public in an effort to increase sales and promote the Subject Vehicles; and (c) enrich themselves through the continued receipt of compensation and other benefits. (ECF No. 1, PageID.12, 30.) The superseding indictment alleges that the purpose of the conspiracy to commit wire fraud was for Defendant, his co-defendants, and his co-conspirators to obtain money and property for FCA through the production and sale of Subject Vehicles that they knew did not comply with the EPA rules and regulations governing emissions by (a) making and

4

causing others to make material misrepresentations to FCA's Regulators, and (b) making and causing others to make material misrepresentations to purchasers and potential purchasers of the Subject Vehicles.  (ECF No. 64, PageID.1636.)

## II. Legal Standard

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be a plain written statement of the essential facts constituting the offense charged.  An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).  An indictment as drafted is presumed sufficient if it tracks statutory language, cites the elements of the crimes charged, and provides approximate dates and times.  *United States v. Chichy*, 1 F.3d 1501, 1504 n.3 (6th Cir. 1993).  When considering a motion to dismiss, a court does not evaluate the evidence upon which the indictment is based. *United State v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001).  And a court may make preliminary findings of fact to decide questions of law as long as those findings "do not invade the province of the ultimate finder of fact." *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992).  To survive a motion to dismiss, the indictment must assert facts which in law constitute an offense, and which, if proven, would establish prima facie the defendant's commission of that crime. *Landham*, 251 F.3d at 1079.

## III. Analysis

Under 18 U.S.C. § 1343, it is a crime to effect with the use of wires "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent

5

pretenses, representations, or promises." The Supreme Court has held that under this statute, the government must show not only that the defendant engaged in deception but also that an object of that deception was money or property. *See Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) (citations omitted). Moreover, the "exercise of regulatory power cannot count as the taking of property" for purposes of the property fraud statutes. *Id.* at 1573.

In the order dismissing the wire fraud and conspiracy to commit wire fraud charges set forth in the original indictment, the Court noted that the government did not dispute that to the extent the purpose of the scheme was to obtain regulatory approval to sell the Subject Vehicles, this cannot be the basis for the wire fraud scheme under *Kelly*. However, the government argued that the scheme also had the goal of fraudulently obtaining money from potential purchasers of FCA's diesel vehicles. The Court noted that this theory lacks convergence; more specifically, the party alleged to have been deprived of money or property is not the same party who was actually deceived. The Court did not find the lack of convergence dispositive, however, and instead dismissed the wire fraud and conspiracy to commit wire fraud charges because the causal connection between Defendant's alleged deceit and FCA's customers' loss of money was too attenuated. *See United States v. Frost*, 125 F.3d 346, 360 (6th Cir. 1997) (declining to resolve the issue of whether the property fraud statutes require convergence "because even the cases which have held that convictions may rest upon the deceit of a person other than the ultimate victim contemplated that the deception was causally related to the scheme to obtain property from the victim").

6

Defendant argues that the purpose of the conspiracy remains unchanged from the purpose of the scheme the government previously identified, and the newly charged conspiracy should therefore be similarly dismissed.[2] The government acknowledges that the conspiracy set forth in the superseding indictment is the same scheme that was charged in the original indictment but argues the superseding indictment includes new consumer-focused allegations that address the causal connection issue raised by the Court in its first order.

The Court agrees the substance of the charge is the same. *Compare* Original Indictment, ECF No. 1, PageID.12, 30 (alleging the purpose of the conspiracy was in part to "make and cause others to make false and misleading representations to FCA's customers and the public in an effort to increase sales and promote the Subject Vehicles") *with* Superseding Indictment, ECF No. 64, PageID.1636 (alleging the purpose of the conspiracy to commit wire fraud was "to obtain money and property for FCA through the production and sale of Subject Vehicles that they knew did not comply with EPA rules and regulations governing emissions" in part by "making and causing others to make material misrepresentations to purchasers and potential purchasers of the Subject Vehicles"). And while the ultimate goal of any car manufacturer is to sell vehicles to customers, as the Court noted in its previous order, the scheme here lacks "a sufficiently direct causal nexus" between Defendant's alleged fraud and FCA customers' loss of

---

[2] In his initial brief, Defendant argues that the government is bound by the Court's prior decision under the law-of-the-case doctrine. As the government notes, however, this doctrine is simply " a discretionary tool that courts use to promote efficiency." *See United States v. Cunningham*, 679 F.3d 355, 377 (6th Cir. 2012) (internal quotation marks and citation omitted). In his reply, Defendant instead argues that he is just asking the Court to apply the same legal principles to the superseding indictment as it applied them to the original indictment.

money.  *See United States v. Berroa*, 856 F.3d 141, 152 (1st Cir. 2017).  The property fraud statutes require the fraud to have "naturally induced" the victim to part with his or her money in a sense that "evokes the familiar concept of proximate causation."  *See id.* at 149 n.4, 150.  Because there were intervening circumstances between the allegedly fraudulent behavior necessary to obtain regulatory approval of the Subject Vehicles and the decision of customers to purchase those vehicles, that fraud cannot be said to have naturally induced customers to part with their money.  This is true even if, as the government now alleges, Defendant calibrated the engines in a way that would enable FCA to market the Subject Vehicles as having "best in class" fuel efficiency.  Not only was Defendant not personally responsible for this marketing strategy, but also the fraudulent scheme was allegedly necessary to obtaining this fuel efficiency rating while also passing the emissions tests.  *See* ECF No. 64, PageID.1613-14.  Thus, under the facts of this case, achieving the marketing goal was admittedly intertwined with obtaining regulatory approval.  The government cannot circumvent the holding of *Kelly* by simply repackaging its theory in this way, especially where the role of the underlying regulations is to implement and enforce standards for air quality, water quality, and individual pollutants, not to protect the monetary interests of others.  *Cf. United States v. Christopher*, 142 F.3d 46, 54 (1st Cir. 1998) (affirming wire fraud convictions where the defendant deceived insurance regulators after noting that if "the role of a government regulator is to protect the monetary interests of others, a scheme to mislead the regulator in order to get at the protected funds will affect 'property rights'").

The superseding indictment also alleges that false fuel economy and compliance representations were made directly to customers through a label affixed to each Subject

8

Vehicle and other marketing materials. But there is no allegation Defendant was responsible for or directly involved in these communications. Thus, they too are insufficient to establish a causal link between the alleged fraud and the loss of property or money. And to the extent the government argues the fraudulent conduct not only related to regulatory approval but also addressed performance issues that could have a negative impact on the sale of the Subject Vehicles, this runs contrary to the government's overall theory that Defendant participated in a scheme to produce and sell vehicles that he "knew did not comply with EPA rules and regulations governing emissions" and that the calibrations were unnecessary from an engineering perspective. *See* ECF No. 64, PageID.1636. In sum, similar to the scheme to defraud in the original indictment, the scheme to defraud alleged in the superseding indictment is not sufficient to establish that Defendant conspired to commit wire fraud.

### IV. Conclusion

For the foregoing reasons, Defendant Palma's motion to dismiss Count 8 of the superseding indictment is GRANTED.

SO ORDERED.

> s/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated: October 28, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 28, 2021, by electronic and/or ordinary mail.

> s/Lisa Bartlett
> Case Manager

9