United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,

v.

Emanuele Palma,

    Defendant.
    _____/

Hon. Nancy G. Edmunds

Case No. 19-CR-20626

# Plea Agreement

The United States of America and the defendant Emanuele Palma ("Mr. Palma" or "the defendant") have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1. Count of Conviction

The defendant agrees to plead guilty to Conspiracy to Violate the Clean Air Act, in violation of Title 18, United States Code, Section 371, as charged in Count 1 of the Superseding Indictment.

## 2. Statutory Maximum Penalties

The defendant understands that the offense to which he is

pleading guilty carries the following maximum statutory penalties:

| Term of imprisonment: | Up to 5 years |
| Fine: | Up to $250,000 |
| Term of supervised release | Up to 3 years |

**3. Agreement to Dismiss Remaining Charges**

If the Court accepts this agreement, the United States Attorney's Office for the Eastern District of Michigan, the United States Department of Justice Criminal Division, Fraud Section, and the United States Department of Justice Environment and Natural Resources Division, Environmental Crimes Section (hereafter "the Offices" or "the United States") will move to dismiss all remaining charges at sentencing.

**4. Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes a sentence consistent with its terms, the Offices will not bring additional charges against the defendant for the conduct reflected in the factual basis of this plea agreement or for the conduct described in the Superseding Indictment or Indictment in this case.

## 5. Elements of Count of Conviction

The elements of conspiracy to violate the Clean Air Act are as follows:

*First*, that two or more persons conspired, or agreed, to commit a crime, in this case, a violation of the Clean Air Act (42 U.S.C. § 7413(c)(2)(A)) as described below;

*Second*, that the defendant knowingly and voluntarily joined the conspiracy; and

*Third*, that a member of the conspiracy did one of the overt acts described in the Superseding Indictment for the purpose of advancing or helping the conspiracy.

The elements of the underlying crime, a violation of the Clean Air Act, are as follows:

*First,* that a person knowingly;

*Second,* made a false statement, representation, or certification in; or omitted material information from; or altered, concealed, or failed to file or maintain;

*Third,* a document; and

*Fourth,* the document was filed or required to be maintained under the Clean Air Act.

## 6. Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient

factual basis for the defendant's guilty plea:

VM Motori S.p.A. ("VM"), a diesel manufacturing company based in Cento, Italy, was a supplier to, and beginning in 2013 a wholly owned subsidiary of, Fiat Chrysler Automobiles N.V., parent company of FCA US LLC, formerly Chrysler Group LLC, and FCA Italy S.p.A. (collectively, "FCA"). VM supplied diesel engines to auto manufacturers around the world, including FCA.

FCA designed, engineered, manufactured, and sold motor vehicles worldwide, including in the United States. In 2010, VM began to develop a 3.0-liter diesel engine for use in FCA's Jeep Grand Cherokee and Dodge Ram 1500 vehicles that would be sold in North America.

From 2007 until June 2016, defendant Emanuele Palma worked for VM. In June 2016, Mr. Palma began working directly for FCA US as a member of the Diesel Drivability and Emissions group, after FCA acquired VM.

Mr. Palma was a calibration engineer who specialized in calibrating diesel engines. Mr. Palma had no formal training in U.S. emissions regulations prior to December 2015.

Between 2013 and 2016, FCA submitted applications to the EPA for the 3.0-liter diesel Jeep Grand Cherokee and Ram 1500 vehicles for Model Years 2014 through 2016 (the "Subject Vehicles") to obtain EPA Certificates of Conformity ("COC") for each model year to sell the vehicles within the United States.

FCA obtained COCs for the Subject Vehicles based on materially incomplete COC applications and related submissions. FCA's Certification and Regulatory Affairs groups oversaw regulatory compliance at FCA, including submitting the disclosures necessary to secure regulatory approval and certification.

Prior to FCA's submission of applications for COCs for the Subject Vehicles, Mr. Palma and his colleagues at VM identified and communicated to FCA personnel the T_Eng function as a potential Auxiliary Emissions Control Device ("AECD") subject to approval by the EPA. T_Eng is an algorithm that uses temperature of the engine's coolant, a pre-programmed offset, and the amount of fuel that has been injected into the engine to determine the rate of Exhaust Gas Recirculation, a process by which a portion of the engine's exhaust gas is circulated back into the engine, as opposed

to exiting through the vehicle's tailpipe.

Mr. Palma consulted with FCA's Certification and Regulatory Affairs groups, who oversaw regulatory compliance at FCA and were responsible for submitting the certification applications to the EPA.

After Mr. Palma and others identified and disclosed information regarding T_Eng to FCA personnel, FCA's Certification group determined not to disclose T_Eng as an AECD, and Mr. Palma agreed to go along with that decision. In doing so, Mr. Palma agreed to withhold material information regarding the existence of, or relevant facts concerning, an AECD functioning in the Subject Vehicles. Specifically, Mr. Palma knew that the T_Eng function was properly the subject of regulation by the EPA, as it affected the operation of the emission control system. Mr. Palma understood that the failure to disclose material information related to this AECD prevented the EPA from determining whether the function "reduced the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle and operation and use."

In furtherance of the conspiracy, and in order to achieve its objects and purpose, on or after December 23, 2014, and in the Eastern District of Michigan, a conspirator in FCA's Certification group submitted or caused to be submitted to the Environmental Protection Agency an application pursuant to the Clean Air Act that omitted material information.

## 7. Advice of Rights

The defendant has read the Superseding Indictment, has discussed the charges and possible defenses with his attorneys, has had ample time to discuss all other aspects of this agreement with his attorneys, and understands the elements of the crime charged in Count 1 of the Superseding Indictment to which he is pleading guilty. The defendant understands that, by pleading guilty to conspiracy to violate the Clean Air Act, he is waiving many important rights, including the following:

    **A.**    The right to plead not guilty and to persist in that plea;

    **B.**    The right to a speedy and public trial by jury;

    **C.**    The right to an appointed attorney at trial, if the defendant cannot afford to retain one;

    **D.**    The right to be presumed innocent and to require the United

States to prove the defendant guilty beyond a reasonable doubt at trial;

E. The right to confront and cross-examine adverse witnesses at trial;

F. The right to testify or not to testify at trial, whichever the defendant chooses;

G. If the defendant chooses not to testify, the right to have the jury informed that it may not treat that choice as evidence or an inference of guilt;

H. The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I. The right to compel the attendance of witnesses at trial.

## 8. Collateral Consequences of Conviction

The defendant understands that his conviction may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction in this matter may require that he be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his conviction in this matter may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to

serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant further understands that no one, including his attorneys or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that he chooses to plead guilty regardless of any immigration or other consequences of his conviction.

9. **Defendant's Guidelines Range**

    A. **Court's Determination**

    The Court will determine the defendant's guidelines range at sentencing.

    B. **Acceptance of Responsibility**

    The United States recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and he is awarded the two-level reduction under USSG § 3E1.1(a), the United States recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the United States learns at a future date that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—

including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive any reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C. Other Sentencing Guidelines Recommendations

For the purpose of calculating the Sentencing Guidelines range, the parties agree to recommend to the Court that the following provisions apply to the defendant's guideline calculation:

Section 2Q1.3 (a): Base offense level of six

Section 2Q1.3 (b)(1)(A): Offense involved ongoing, continuous, or repetitive discharge of a pollutant into the environment (add six levels)

Section 2Q1.3 (b)(1)(A), cmt. n. 4: Downward departure due to the

harm resulting from the discharge of the pollutant, the quantity and nature of the pollutant, the duration of the offense, and the risk associated with the violation (reduce two levels)

<u>Section 3E1.1(a):</u> Acceptance of responsibility (reduce two levels)

The parties further agree that, based on the facts known to the parties, the defendant's criminal history category is I.

The parties agree to recommend that the defendant's adjusted offense level is eight, which, when combined with the criminal history category of I, results in an advisory Sentencing Guidelines range of 0 – 6 months' imprisonment.

The parties agree and agree to recommend to the Court that no other sentencing enhancements apply as to the defendant's Sentencing Guidelines calculation.

The parties have no other joint recommendations as to the defendant's Sentencing Guidelines calculation.

**D.     Factual Stipulations for Sentencing Purposes**

The parties have no additional factual stipulations for sentencing purposes.

**E.     Parties' Obligations**

Both the United States and the defendant agree not to take any

position or make any statement that is inconsistent with the factual basis for this plea, as set forth in paragraph 6, any of the Sentencing Guidelines recommendations or factual stipulations as set forth in paragraphs 9.B, 9.C, 9.D, 10.B.1, 10.C.1, 10.D, 10.E, and 10.F. Other than the Sentencing Guidelines recommendations, factual stipulations, and sentencing recommendations in those paragraphs, however, neither party is restricted in what it may argue or present to the Court at sentencing.

### F. Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the Sentencing Guidelines range determined by the Court, even if that Sentencing Guidelines range does not incorporate the parties' recommendations or factual stipulations in paragraphs 9.B, 9.C, 9.D, 10.B.1, 10.C.1, 10.D, 10.E, and 10.F. The United States likewise has no right to withdraw from this agreement if it disagrees with the Sentencing Guidelines range determined by the Court.

## 10. Imposition of Sentence

### A. Court's Obligation

The defendant understands that in determining his sentence, the

Court must calculate the applicable Sentencing Guidelines range at sentencing and must consider that range, any possible departures under the Sentencing Guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B. Imprisonment

#### 1. Recommendation

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States recommends that the sentence imposed fall within the Sentencing Guidelines range recommended by the parties in paragraph 9.C. The defendant recommends a time-served sentence (i.e., a sentence of one day imprisonment with credit for one day time served). Given that such a sentence falls within the Sentencing Guidelines range recommended by the parties, the United States agrees not to object to or oppose the defendant's recommendation for a time-served sentence, provided that the defendant complies with his obligations pursuant to paragraph 9.B (Acceptance of Responsibility).

#### 2. No Right to Withdraw

The United States' recommendation in paragraph 10.B.1 is not binding on the Court. The defendant understands that he will have no

right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the United States' recommendation. The United States likewise has no right to withdraw from this agreement if the Court decides not to follow the United States' recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the United States will be permitted to withdraw from the agreement.

### C. Supervised Release

#### 1. Recommendation

The United States does not take a position, and will not make a recommendation, as to a term of supervised release. The defendant recommends that the Court not impose any term of supervised release.

#### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the United States' recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 10.C.1, will not apply to or limit any term of imprisonment that results

from any later revocation of supervised release in the event the Court imposes a term of supervised release.

### D. Fines

The United States does not take a position, and will not make a recommendation, as to a fine. The defendant recommends that the Court not impose any fine in this case.

### E. Restitution

The parties agree that restitution is not applicable in this case.

### F. Forfeiture

The parties agree that forfeiture is not applicable in this case.

### G. Special Assessment

The defendant understands that he will be required to pay a special assessment of $100, due immediately upon sentencing.

## 11. Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the top of the Sentencing Guidelines range as determined by the Court, he also waives any right he may have to appeal his sentence on any grounds.

## 12. Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

### 13. Consequences of Withdrawal of Guilty Plea or Vacation of Judgment

If the defendant is allowed to withdraw his guilty plea, or if the defendant's conviction or sentence under this agreement is vacated, the United States may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant

conduct. If the United States reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

14. **Use of Withdrawn Guilty Plea**

    The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the United States may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

15. **Parties to Plea Agreement**

    This agreement does not bind any government agency except the Offices.

16. **Scope of Plea Agreement**

    This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the

guilty plea is entered in court. Thus, no oral or written promises made by the United States to the defendant or to the attorneys for the defendant at any time before he pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

Dawn N. Ison
United States Attorney

*s/ J K N*

John K. Neal
Chief, White Collar Crime Unit
Timothy J. Wyse
Assistant United States Attorney
Eastern District of Michigan

Todd Kim
Assistant Attorney General

*s/ J K N for TWG*

Todd W. Gleason

Page **18** of **20**

Senior Litigation Counsel
U.S. Department of Justice
Environmental Crimes Section
Environmental and Natural Resources Division


Glenn S. Leon Chief
U.S. Department of Justice
Criminal Division, Fraud Section


*/s/ A Neal for MO'N*
Michael T. O'Neill
Assistant Chief
Amanda Swanson
Trial Attorney

By signing below, the defendant and his attorneys agree that the defendant has read or been read this entire document, has discussed it with his attorneys, and has had a full and complete opportunity to confer with his attorneys. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorneys, and is satisfied with his attorneys' advice and representation.

_____  
Greg D. Andres  
Paul J. Nathanson  
Uzo Asonye  
Davis Polk & Wardwell LLP  

Kenneth M. Mogill  
Mogill, Posner & Cohen  

Attorneys for Defendant

_____  
Emanuele Palma  
Defendant

Dated: Wednesday, July 19, 2023